**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DELMOND C. COZART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1142-R** |
| | ) | |
| **OKLAHOMA STATE REFORMATORY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Delmond C. Cozart, a state prisoner proceeding pro se, filed a Complaint under 42 U.S.C. § 1983 alleging civil rights violations while incarcerated at the Oklahoma State Reformatory ("OSR") in Granite, Oklahoma. Doc. 1. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. §§ 636(b)(1)(B)-(C). Doc. 4. Currently before the court is Plaintiff's motion for emergency injunctive relief ("Motion"). Doc. 15. For the reasons set forth below, the undersigned recommends that the Court deny Plaintiff's Motion.

## I. Plaintiff's Complaint and Background

Plaintiff is in Oklahoma Department of Corrections ("ODOC") custody and alleges constitutional violations against OSR and two prison officials. Doc. 1 at 4-10; Doc. 1-1 at 1. He first claims OSR's Kitchen Supervisor was deliberately indifferent to his medical needs when she failed to follow a doctor's order to substitute tuna for eggs due to Plaintiff's egg intolerance. Doc. 1 at 6-7; Doc. 1-1 at 1-2. Plaintiff also alleges a prison official violated his constitutional rights when she failed to pay a filing fee in another case, causing

his suit to be dismissed. Doc. 1 at 7-8; Doc. 1-1 at 1. After initial review of the Complaint, the Court ordered prison officials to file a Special Report and ordered Defendants to file an answer or dispositive motion. Doc. 17 at 1-2. Defendants filed a Special Report, Doc. 33, and a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Doc. 34. Defendant has until September 18, 2026, to respond. Doc. 45.

Prison records from the Special Report indicate Plaintiff tested negative for an egg allergy on July 2, 2024. Doc. 33-3 at 57-58. On January 9, 2025, a doctor at Plaintiff's prior prison[1] issued an order that he should be allowed to substitute tuna in place of eggs due to an egg intolerance. Doc. 33 at 5; *see also* Doc. 33-3 at 39 (medical note in Plaintiff's file from January 9, 2025, indicating he "has Intolerance to Egg – need to change to Tuna if egg is on the Menu"). The doctor's order, though, was withdrawn on February 11, 2025. Doc. 33-3 at 67. That day, a doctor entered an order stating Plaintiff "has intolerance to eggs" and "may use Tuna or other meat products as substitutes for eggs." *Id.* The medical record further indicates: "Per policy we do not accommodate food preferences. Egg allergy testing confirmed NO allergy present." *Id.* ODOC's food policy, Policy OP-070202, only provides accommodation for confirmed food allergies. Doc. 33-4 at 17 (explaining a food allergy is indicated by a "confirmed allergy," and "when the food an inmate is allergic to is on the Main line, the inmate will be provided a substitute for that food" (citation modified)).

[1] In early 2025, Plaintiff was detained at what was then known as Lawton Correctional and Rehabilitation Center, a private prison. Doc. 33-2 at 2.

## II. Plaintiff's Motion for Emergency Injunctive Relief

On January 7, 2026, Plaintiff filed the Motion seeking emergency injunctive relief to order OSR "to comply with the doctor's order 1-9-25 to substitute for eggs when eggs are on the menu." Doc. 15 (citation modified). Plaintiff includes only one sentence in support of his Motion: "[OSR] advised me to eat around the egg, but if I do that I'm getting underfed and serving me egg exposes me to danger." *Id*. (citation modified).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (citation modified).

As to irreparable harm, a "movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Id.* (citation modified). "Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered. Demonstrating irreparable harm is not an easy burden to fulfill." *Id*. (citation modified). "In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial." *Dominion*

*Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (citation modified).

Plaintiff has not established probable irreparable harm. Allergy testing in July 2024 confirmed Plaintiff does not have an allergy to eggs; he only has an intolerance. Doc. 33-3 at 57-58, 67. "Food reactions vary in severity. Food 'intolerances' and 'sensitivities' cause discomfort but are not serious diseases or life-threatening conditions." *Ajaj v. United States*, No. 15-CV-02849, 2025 WL 2379643, at *4 n.7 (D. Colo. Aug. 8, 2025) (R&R), *adopted*, 2025 WL 2771610 (D. Colo. Sept. 29, 2025). "Food intolerance refers mostly to the inability to process or digest certain foods," while "a more severe problem happens when someone develops a true allergic reaction, an overblown response by the body's immune system against a seemingly harmless substance — in this case, a food." Marcelo Campos, MD, *Food allergy, intolerance, or sensitivity: What's the difference, and why does it matter?*, Harvard Health Publishing - Harvard Medical School (Jan. 30, 2020), *at* https://www.health.harvard.edu/blog/food-allergy-intolerance-or-sensitivity-whats-the-difference-and-why-does-it-matter-2020013018736 (last visited Aug. 21, 2026) (citation modified).

ODOC's food policy provides accommodation only for confirmed food allergies. Doc. 33-4 at 17. Plaintiff does not have a confirmed egg allergy and presents no evidence otherwise that he medically requires an egg-free diet. Nor has he sufficiently shown that eggs are causing him to be "underfed" or "expose[d]" "to danger," Doc. 15. Plaintiff has not established a sufficient probability of irreparable harm from ODOC's food policy based on his egg intolerance. The Court should deny Plaintiff's Motion.

## III. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **DENY** Plaintiff's motion seeking emergency injunctive relief, Doc. 15. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than **September 11, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 21st day of August, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE